UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MONICA M. JOHNSON,

                        Plaintiff,

      -vs-                    **No. 1:16-CV-01003 (MAT)**
                                                    **DECISION AND ORDER**
NANCY A. BERRYHILL, *Acting Commissioner of Social Security*,

                        Defendant.

---

## I. Introduction

Represented by counsel, plaintiff Monica M. Johnson ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of defendant the Acting Commissioner of Social Security (the "Commissioner" or "Defendant") finding her no longer disabled as of November 19, 2013. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is granted to the extent that this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order, and the Commissioner's motion is denied.

## II. Procedural History

Based on an application filed in July 2006, Plaintiff was previously found disabled as of August 1, 2006. Administrative

Transript ("T.") 11, 68, 197-204.  In 2009, the Commissioner initiated a continuing disability review ("CDR") of Plaintiff's claim.  In a decision dated September 17, 2009, the Commissioner found that Plaintiff's disability continued.  T. 27-31.

A second CDR of Plaintiff's claim was initiated in 2013.  On November 19, 2013, the state agency (acting on behalf of the Social Security Administration) determined that Plaintiff was no longer disabled as of that date.  T. 246-53.  Plaintiff timely requested reconsideration of this determination on January 6, 2014. T. 254.  The initial determination was upheld on reconsideration by decision dated May 5, 2014.  T. 261-69.  Plaintiff thereafter timely filed a written request for a hearing.  T. 276.

A hearing was held before Administrative Law Judge ("ALJ") William M. Weir on January 5, 2015.  T. 205-240.  Plaintiff appeared with her attorney, and testimony from both Plaintiff and her sister, Ambrosia Thomas, was taken.  *Id.*  On July 13, 2015, the ALJ issued an unfavorable decision upholding the state agency's termination of Plaintiff's benefits and finding that Plaintiff was not disabled as of November 19, 2013.  T. 8-23.  The Appeals Council denied Plaintiff's request for review on October 17, 2016, rendering the ALJ's determination the final decision of the Commissioner. T. 1-4.  This action followed.

2

**III. The ALJ's Decision**

As set forth above, this case involves a termination of Plaintiff's previously granted benefits. Pursuant to the Act, "[t]he Commissioner may terminate a . . . recipient's benefits if a review reveals substantial evidence that the recipient's condition has improved in a manner relevant to the recipient's ability to work, and that the recipient can now engage in substantial gainful activity." *Daif v. Astrue*, No. 07-CV-5400 (JG), 2008 WL 2622930, at *5 (E.D.N.Y. July 1, 2008); *see also Williams v. Barnhart*, No. 01 CIV. 353(SAS), 2002 WL 618605, at *4 (S.D.N.Y. Apr. 18, 2002) ("After a declaration of disability entitling the claimant to DIB and SSI benefits, benefits can be terminated based on a finding that the relevant impairment has ceased, no longer exists or is not disabling.").

20 C.F.R. §§ 404.1594 and 416.994 set forth an evaluation process for determining whether a claimant's disability has ended. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Second, the ALJ must consider whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Third, the ALJ must determine whether a medical improvement has occurred. A medical improvement is "any decrease in the medical severity of impairment(s) present at the time of the most recent

favorable medical decision that [the claimant was] disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 404.1594(b)(1).

Fourth, if the ALJ finds that there has been a medical improvement, he must consider whether it is related to the claimant's ability to do work. A medical improvement is related to the ability to do work when it results in an "an increase in [the claimant's] functional capacity to do basic work activities." 20 C.F.R. § 404.1594(b)(3).

Fifth, the ALJ must consider whether an exception to medical improvement, as set forth in 20 C.F.R. §§ 404.1594(d),(e) and 416.994(b)(3) applies. Sixth, the ALJ must consider whether claimant's current impairments, considered in combination, are severe.

Seventh, the ALJ must consider the claimant's residual functional capacity ("RFC") based on the current impairments, and determine whether claimant is capable of any past relevant work. Lastly, the ALJ must determine whether other work exists in the national economy that the claimant can perform, taking into account her RFC, age, education, and past work experience.

In this case, the ALJ applied the evaluation process set forth above in considering whether Plaintiff's disability had ended as of November 19, 2013. Initially, the ALJ noted that the most recent

4

favorable medical decision finding that Plaintiff continued to be disabled (known as the "comparison point decision" or "CPD") was dated September 17, 2009. T. 13. The ALJ further noted that at the time of the CPD, Plaintiff had the medically determinable impairments of anemia, diabetes, asthma, and hypertension. *Id*. Plaintiff's anemia was found to meet section 7.02B of the Listings at that time. *Id*.

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity as of November 19, 2013. *Id*. At the second step, the ALJ determined that, as of November 19, 2013, Plaintiff had the medically determinable impairments of insulin-dependent diabetes mellitus, anemia, hypertension, obesity, rheumatoid arthritis, osteoarthritis of the knees, and fibromyalgia. *Id*. The ALJ further found that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. *Id*.

At the third and fourth steps, the ALJ found that a medical improvement in Plaintiff's condition had occurred as of November 19, 2013, and that the medical improvement was related to the ability to work. T. 13-14. The ALJ next found that the Plaintiff continued to have a severe impairment or combination of impairments. T. 14.

The ALJ concluded that, based on her current impairments, as of November 19, 2013, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the

5

following additional limitations: can occasionally use ramps, stairs, ladders, ropes, or scaffolds; can occasionally kneel, crouch, or crawl; cannot work above the level of a specific vocational profile of two; and can have no more than occasional contact with coworkers, supervisors, or the public. *Id*. The ALJ further found that Plaintiff had no past relevant work. T. 18.

At the final step of the analysis, the ALJ relied on the testimony of a vocational expert to conclude that, considering Plaintiff's age, education, work experience, and RFC as of November 19, 2013, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cafeteria attendant and stock checker. T. 18-19. Accordingly, the ALJ found that Plaintiff's disability had ended on November 19, 2013, and that Plaintiff had not become disabled again since that date. T. 19.

**IV. Discussion**

   **A.   Scope of Review**

A district court may set aside the Commissioner's final determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation

6

omitted). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

Here, Plaintiff contends that this matter must be remanded to the Commissioner for additional proceedings because: (1) the ALJ failed to develop the record by obtaining an RFC opinion from a treating physician; (2) the ALJ failed to properly consider the medical listings for hematological disorders; and (3) the ALJ failed to properly evaluate Plaintiff's fibromyalgia under Social Security Ruling ("SSR") 12-2p. For the reasons set forth below, the Court agrees with Plaintiff that additional proceedings are warranted.

### B. Consideration of Plaintiff's Fibromyalgia and Failure to Obtain Treating Physician Opinion

Plaintiff contends that the ALJ failed to properly consider the limiting impacts of her severe impairment of fibromyalgia. Plaintiff notes that SSR 12-P requires an ALJ to consider the impacts of fibromyalgia at all steps of his analysis, and argues that the ALJ in this case failed to do so. Plaintiff further notes that the ALJ failed to request an RFC opinion from rheumatologist

7

Dr. Danilo Saldana, who treated Plaintiff's ongoing joint and muscle pain. The Court agrees with Plaintiff that the ALJ's consideration of her fibromyalgia, including the failure to seek an opinion from Dr. Saldana, was erroneous.

"[F]ibromyalgia is a [potentialy] disabling impairment and . . . there are no objective tests which can conclusively confirm the disease." *Green-Younger,* 335 F.3d at 108 (internal quotation omitted). A fibromyalgia patient may experience constant pain, yet "physical examinations will usually yield normal results — a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Id*. at 108-109 (internal quotation omitted). In recognition of the unique nature of fibromyalgia, the Commissioner has promulgated SSR 12-2p, which acknowledges that "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of [fibromyalgia]." SSR 12-2p, 2012 WL 3104869, at *3 (S.S.A. July 25, 2012). "SSR 12–2p specifically recognize[s] the importance of relying on the opinion of a medical provider [in claims involving fibromyalgia]. . ., since a treating source would have the longitudinal picture of a claimant's impairments, especially given the fact that fibromyalgia often involves varying signs and symptoms." *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 235 (E.D.N.Y. 2014).

In this case, the ALJ determined that Plaintiff suffered from the severe impairment of fibromyalgia. T. 13. Nevertheless, the

8

ALJ failed to obtain a medical source statement regarding Plaintiff's limitations from any of her treating physicians. Instead, the ALJ relied upon the opinion of consultative examiner Dr. Samuel Balderman, who examined Plaintiff on a single occasion and whose report makes no mention whatsoever of Plaintiff's fibromyalgia. The Court agrees with Plaintiff that this was error.

"ALJs have an affirmative duty to request medical source statements from a plaintiff's treating sources in order to develop the record." *Battaglia v. Astrue,* No. 11 CIV. 02045 BMC, 2012 WL 1940851, at *7 (E.D.N.Y. May 29, 2012). This duty "is grounded in the regulations themselves, which provide that the Commissioner will make every reasonable effort to obtain medical reports from a claimant's medical sources, including a statement about the claimant's capabilities in light of her impairments." *Id*. The duty to obtain medical source statements from treating physicians takes on particular significant in cases involving fibromyalgia, where the longitudinal record is of primary importance. *See Battaglia v. Astrue*, No. 11 CIV. 02045 BMC, 2012 WL 1940851, at *8 (E.D.N.Y. May 29, 2012) (medical source statements are "particularly significant" where the "primary impairment during the relevant period was fibromyalgia").

The ALJ in this case did seek a medical source statement from Plaintiff's primary care physician, Dr. Jyotsna Rajeswary, which was not returned. *See* T. 403-409. However, there is no indication in the record that the ALJ sought a medical source statement from treating rheumatologist Dr. Saldana. Dr. Saldana treated Plaintiff

9

for ongoing "multiple joint and muscle pain." T. 727. Dr. Saldana specifically noted that Plaintiff had "many tender points in the upper back, upper back, upper chest, lower back, elbows, hips, and knees" (T. 725), as would be expected from a fibromylagia patient. Dr. Saldana, as a specialist who had treated Plaintiff's joint and muscle pain over time, was in the best position to offer an opinion on the limiting effects of Plaintiff's fibromyalgia. The ALJ nevertheless failed to even request such an opinion from Dr. Saldana, in contravention of his duties under the Commissioner's regulations. This error was not harmless, because no other medical opinion in the record specifically considers Plaintiff's fibromyalgia in assessing her functional limitations. Accordingly, remand of this matter for further proceedings is required. On remand, the ALJ must make reasonable efforts to obtain medical source statements from Plaintiff's treating physicians regarding the impact of her fibromyalgia (and other medically determinable impairements)on her ability to perform work-related functions.

The Court further agrees with Plaintiff that the ALJ erred in failing to consider Plaintiff's fibromyalgia when assessing her credibility. As Plaintiff notes, the ALJ discounted Plaintiff's credibility in part because she had participated in an "exercise camp" where she did jumping jacks. T. 17. However, Plaintiff explained at the hearing that she had participated in this "exercise camp," which took place at her church, for only a single day. T. 219. Plaintiff further explained that she was attempting to improve her overall health despite but was ultimately unable to

continue participating. T. 219-20. SSR 12-2p explicitly notes that fibromyalgia may "wax and wane so that a person may have 'bad days and good days.'" 2012 WL 3104869, at *6. The ALJ failed to consider whether the intermittent nature of fibromyalgia symptoms could reasonably explain Plaintiff's ability to exercise on a single occasion before finding her credibility diminished. On remand, the ALJ is instructed to take Plaintiff's fibromyalgia into account throughout his analysis.

## C. Consideration of the Hematological Listings

As noted above, Plaintiff also argues that the ALJ erred in failing to properly consider whether Plaintiff's impairments met or equaled a listed impairment. Plaintiff points out that the ALJ considered whether Plaintiff's anemia met Listing 7.02(B), but that this listing was actually removed on May 18, 2015, roughly two months before the ALJ issued his decision. The Commissioner acknowledges that the ALJ "did not discuss the change in the Listing" (Docket No. 12-1), but contends that the error was harmless because it did not impact the ultimate conclusion. However, because the Court has already found that remand of this matter is required, it need not and does not reach the issue of whether the ALJ's failure to apply the current version of the listings was harmless. On remand, the ALJ shall consider whether Plaintiff's impairments meet or equal any of the current listings.

## V. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 11) is granted to the extent that this

matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Commissioner's motion for judgment on the pleadings (Docket No. 12) is denied. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   August 9, 2018
         Rochester, New York.